### Baker v. Bucyrus-Erie Co.
(Decided Oct. 4, 1938.)

MARCUS C. REDWINE and S. S. WILLIS for appellant.

BENTON & DAVIS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

T. H. Baker sued the appellee, Bucyrus-Erie Company, for $700.60 damages caused by an alleged breach of contract. The case was decided upon the pleadings in favor of the defendant, and the plaintiff appeals.

Before the pleadings reached finality there had been numerous strategic skirmishes, fought with demurrers, motions and objections. Complaint of the rulings thereon is registered, it being insisted that the court erroneously compelled the production of supplemental contracts upon which the plaintiff's cause of action was not based. It seems to us these intermediate rulings, at least because of the result produced, were proper. They developed the case. We look to the final alignment as thereby disclosed and review the ultimate result.

Baker purchased from the appellee a 10-B combination shovel and clamshell machine for use in road construction. The price was $5,025, of which $1,257 was paid in cash, the balance being covered by 12 monthly notes for $314 each. The seller agreed to deliver the machine on or about April 11, 1934, "unless delayed by unforeseen contingencies or unavoidable occurrences of any sort, at our works or elsewhere," and for any loss or damage arising from delay from any of such causes the company was not to be liable.

On May 7, 1934, a supplemental agreement was made. Referring to the first contract and its terms, and reciting that the 10-B machine was wanted for use on a penalty contract, under which the purchaser would be liable for $50 a day for failure to complete it on time, and that "because of certain unforeseen contingencies and unavoidable occurrences," the company had not been able to deliver that machine and had shipped a 16-B shovel to take its place temporarily. This was to be returned when the 10-B machine had been delivered. Other provisions of that agreement are as follows:

"3. Upon the completion of Baker's contract, and the determination of the amount of penalty due for delays in the completion thereof, Bucyrus will pay to Baker either the amount of such penalty, or the sum of fifty dollars per day from April 11, 1934, to the date of shipment of the 16-B, whichever is the less. This payment is to be made by credit against principal and interest then due on the latest unpaid installments of purchase money of the 10-B.

"4. As full liquidated damages for the delay in shipping the 10-B, the further sum of five hundred dollars is hereby applied in cancellation of the twelfth deferred installment of the purchase price of the 10-B, and in reducing the eleventh installment to one hundred and twenty-eight dollars.

"5. Except as altered herein the sales contract of April 6, 1934, is to remain in full force and effect."

On July 5th, 1934, Baker purchased the 16-B shovel at a price of $7365, of which one-fourth was paid in cash and fourteen (14) monthly notes of $394 given for the balance. This was the third contract.

In December, 1935, Baker brought this suit to recover $500 which he alleged he was compelled to pay his men while waiting 33 days for the delivery of the 16-B shovel in place of the 10-B machine contracted to be delivered on or before April 11, 1934, and $200.60 which he was required to spend for quick-drying cement in excess of the ordinary cement, this being used in order to complete the road on time and avoid the penalties. The original petition expressly planted the cause of action for both items on the first contract of April 6th, although it was not filed as an exhibit. That was

done under order of court in an amended petition which also filed the second contract of May 7th, as an exhibit. However, it was yet maintained that the damages of $500 alleged were the result of the breach of the first contract. An oral supplemental agreement was pleaded to sustain the right to recover on the $200.60 item.

Affirmative defenses were based upon the terms of the first and second contract, also, and more particularly, upon a fourth contract, a copy of which was filed with the answer. It is dated September 6, 1934. This was averred to have cancelled the first contract, and it was pleaded in bar of any right of the plaintiff to rely upon any other contract. That instrument refers to the three former contracts. It was therein specifically agreed that the first and second (original of April 6th and supplemental of May 8th) "are hereby cancelled and the following understandings are substituted therefor":

"(1) Bucyrus is to make no charge for the use of the 16-B machine except as provided in the contract for the sale thereof.

"(2) Upon the completion of Baker's construction contract referred to in the Supplemental Agreement of May 8, 1934, and the determination of the amount of penalty due for delays in the completion thereof, Bucyrus will pay to Baker either the amount of such penalty, or the sum of $30.00 per day from April 11, 1934, to the date of shipment of the 16-B, whichever is the less. This payment is to be made by credit against principal and interest then due on the latest then unpaid installments of purchase money of the 16-B.

"(3) The further sum of $500.00 is hereby applied in cancellation of the fourteenth deferred installment of the purchase price of the 16-B, and in reducing the thirteenth installment to $295.00."

The court overruled the plaintiff's motion to strike as exhibits the contracts of July 5th and September 6th, and other motions and demurrers attacking the defendants' pleadings except in some unimportant respects. An amended or substitute answer was filed which reiterated with more particularity the pleading of the substitution of the fourth contract as a novation and as an

accord and satisfaction. Demurrers to this and plaintiffs' motions were overruled. He filed a reply. This reply as amended averred that the fourth contract was without consideration and that the agreement to apply the $500 allowed as liquidated damages to the full payment of the fourteenth note and partial payment of the thirteenth note "was never carried out or performed and the benefits granted therein to plaintiff were never received by him," and that the defendant had not cancelled those notes or either of them. It was pleaded that the company had re-possessed the 16-B machine "in payment of said 14 notes and in entire satisfaction thereof, and had agreed to deliver to him the 14 notes." In addition to the cash payment the plaintiff had paid $918 on the notes. The plaintiff averred that the repossession of the machine by the defendant constituted a failure of consideration and that he had never received the $500 agreed to be paid him as liquidated damages for loss sustained by the delay in shipping the machine, or the $200.60 extra cost of quick cement. It was further stated in the amended reply that the plaintiff had returned the machine to the defendant "under an agreement entered into subsequent to September 6, 1934, whereby upon the repossession of said shovel by defendant it would surrender to plaintiff all of his then remaining 12 notes which it held." It stated that the defendant had delivered to plaintiff his 14 notes, but he had never agreed to relinquish his demand for the $500 liquidated damages.

On defendant's motion the amended reply was stricken. Counsel for appellant earnestly and ably argue his right to set up in his reply the failure of consideration and other defenses in avoidance of the affirmative pleading of his adversary presented in its answer; therefore, that it was error to strike the amended reply. Undoubtedly the appellant is right in principle. But the effect here was to sustain a demurrer to the reply as amended although it was through the process of a motion to strike. The better practice would have been to sustain a demurrer to it. Mann v. Woodward, 217 Ky. 491, 290 S. W. 333. The proceeding taken was equivalent to refusing to allow the amended reply to be filed, and that method is treated as sustaining a demurrer to an offered pleading. Dugan v. Long, 234 Ky. 511, 28 S. W. (2d) 765. We shall so treat it.

In short and in fine, it is an unescapable conclusion from a consideration of the exhibits and those portions of the voluminous pleadings which do not otherwise stand contradicted that the parties definitely agreed upon the contract of September 6th as taking the place of all that had gone before. The plaintiff, as stated, planted his cause of action for the $500 on the first contract. The defendant relied on the last. The record establishes conclusively that it was subsequently agreed that the seller would and did allow $500 credit on the unpaid purchase price of the 16-B machine to cover whatever delinquencies on its part there may have been and this was accepted by the purchaser. We cannot perceive that the plaintiff did not get credit on the unpaid purchase price as thus agreed. All of the unpaid fourteen notes were cancelled and surrendered—the last one in full and the thirteenth in part by the credit of $500 which had been theretofore expressly given on September 6th, 1934. The others were satisfied by the surrender of the machine at a much later date. We do not think the plaintiff showed any right to recover an additional $500.

But the claim for $200.60 is independent and on a different plane. The contract of September 6th, agreed to pay the purchaser not only the $500 but in addition $30 a day, or whatever specific sum the purchaser might have to pay as a penalty for delay. The plaintiff's pleadings sufficiently state a cause of action on a separate or fifth contract made orally with an authorized agent of the seller in January or February, 1935, to reimburse him the $200.60 which he had been compelled to pay in using quick cement in order to avoid the daily penalty which he would otherwise have had to pay and the seller would otherwise have had to reimburse. It was done, as claimed, to minimize damages. Issues were joined upon this pleading of an oral contract and its breach, and we are of opinion to that extent the case should have been tried and submitted to a jury if the evidence authorized it.

Wherefore, the judgment is affirmed in **part and re-**versed in part for consistent proceedings.